IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **RYNE M. SEETO,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.  1:20-cv-01516-CCB |
| ) | |
| **BARBARA M. BARRETT,** ) | |
| **SECRETARY OF THE AIR FORCE,** ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

### INTRODUCTION

On June 8, 2020, Plaintiff Ryne M. Seeto filed the present complaint and sought as his only relief a temporary restraining order to prevent the U.S. Air Force from discharging him. The Air Force had already been processing his approved discharge for misconduct. On June 9, 2020, Seeto was discharged from the U.S. Air Force, effective June 8, 2020. The relief Seeto seeks is now moot and his Complaint should be dismissed. In the alternative, this Court lacks subject matter jurisdiction because Seeto is still pursuing his administrative remedies and any subsequent claim for judicial review he pursues would likely be within the exclusive jurisdiction of the Court of Federal Claims.

### I.   Administrative Discharges

The Air Force may discharge[1] a commissioned military officer, among other reasons, for poor performance or for misconduct. 10 U.S.C. § 1181; AFI 36-3206, *Administrative Discharge*

---

[1] Discharge is a complete severance from military status. Air Force Instruction (AFI) 36-3207, *Separating Commissioned Officers* (July 9, 2004), at 46, *available at* https://static.e-publishing.af.mil/production/1/af_a1/publication/afi36-3207/afi36-3207.pdf.  Separation is a general term that includes discharge. *Id*. at 47.

*Procedures for Commissioned Officers* (June 9, 2004), paras. 2.3, 3.6, *available at* https://static.e-publishing.af.mil/production/1/af_a1/publication/afi36-3206/afi36-3206.pdf; AFI 36-3207, para. 3.16.  Officers with at least six years of active duty service are entitled to a hearing before a board of officers, known as a Board of Inquiry (BOI).  10 U.S.C. §§ 1182, 1184, 1185; AFI 36-3206, para. 4.28; *cf.* 10 U.S.C. § 630 (no board requirement for discharge of officers with less than six years).  Agency regulations determine the procedures for such discharges.  10 U.S.C. § 1181.

      The procedures for discharge of an officer are primarily set out in AFI 36-3206 and AFI 36-3207.  Officer discharges are initiated by the first general officer in the chain of command.[2]  *See* AFI 36-3206, para. 1.1; AFI 36-3207 at 45 (glossary entry for Show Cause Authority).  This commander, known as the Show Cause Authority, provides the subject officer written notification to show cause for his retention, essentially an opportunity to rebut the reasons and evidence for discharge.  *See* AFI 36-3207, Chapters 3, 4, 7.  If the officer facing discharge is entitled to a BOI, he may waive such a board hearing.  *See* AFI 36-3207, paras. 3.9.3, 3.25.  If a BOI is conducted and the BOI decides in favor of retention, then the matter is concluded.  *See* AFI 36-3206, para. 7.36.1.  If the BOI recommends discharge or the officer waives the BOI, then the matter is forwarded up the chain of command for further recommendations and eventually a final decision by the Secretary of the Air Force or her delegee.  *See* AFI 36-3206, paras. 6.9–6.11, 7.36.2.

---

[2] The commissioned officer grades in the Air Force from highest to lowest are: General, Lieutenant General, Major General, Brigadier General, Colonel, Lieutenant Colonel, Major, Captain, First Lieutenant, Second Lieutenant. 10 U.S.C. §§ 601, 9151.

Pursuant to these procedures, the Air Force may discharge an officer for serious or recurring misconduct punishable by military or civilian authorities.  AFI 36-3206, para. 3.6.4.  Serious misconduct is defined as:

> Any misconduct punishable by military or civilian authorities. This includes any misconduct that, if punished under the Uniform Code of Military Justice (UCMJ), could result in confinement for 6 months or more, and any misconduct requiring specific intent for conviction under the UCMJ.

AFI 36-3206 at 49–51.  Upon discharge, the officer's military service may be characterized as any of the following:

> [(1)] A discharge under other than honorable conditions (UOTHC).
> [(2)] A discharge under honorable conditions (general).
> [(3)] An honorable discharge.

AFI 36-3206, para. 3.1.  UOTHC is the worst and honorable is the best characterization.  *See* AFI 36-3207, para.1.7.

A military member is discharged when his discharge certificate and final pay are ready for delivery.  10 U.S.C. § 1168.  A "final accounting of pay" satisfies the final pay requirement.  *United States v. King*, 27 M.J. 327, 329 (C.M.A. 1989).

## II.   Statement of Facts

In 2016, Seeto was tried and convicted by general court-martial of several sex-related offenses, and acquitted of some other sex offenses.  (*See United States v. Seeto*, No. ACM 39247, 2018 CCA LEXIS 518, at *1–9 (A.F. Ct. Crim. App. Oct. 26, 2018) (unpublished); *see also* corrected copy of same opinion at 1–7, attached hereto as **Exhibit A**.)  Seeto was sentenced to confinement for 10 months and a dismissal.[3]  *Seeto*, 2018 CCA LEXIS 518, at *1, Ex. A at 1.

---

[3] For a military officer, a court-martial may adjudge only one form of punitive discharge, dismissal, or no discharge at all.  Rules for Courts-Martial (R.C.M.) 1003(b)(8), *available at* https://www.loc.gov/rr/frd/Military_Law/pdf/MCM-2019.pdf.  By contrast, a court-martial may

3

On October 26, 2018, due to the lost trial record, the U.S. Air Force Court of Criminal Appeal (AFCCA) set aside both the findings of guilt and the sentence and, accordingly, authorized rehearing.  *Seeto*, 2018 CCA LEXIS 518, at *19–21, 35; Ex. A at 11–13, 20.

On June 26, 2019, the Air Force conducted the court-martial rehearing.  (*See* Discharge Documents at 6–9, attached hereto as **Exhibit B**.)  Pursuant to a written pretrial plea agreement, Seeto pled guilty, with exceptions and substitutions, to the charged offense of conduct unbecoming of an officer and gentleman, in violation of Article 133, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 933.  (*See* Ex. B at 6–7, 10; *see also* Charge Sheet, attached hereto as **Exhibit C**.)  The rewritten charge alleged that Seeto did "grab and hold [the victim's] body with his hands and legs without her express consent," "which acts under the circumstances, constituted conduct unbecoming an officer and a gentleman," in violation of Art. 133, UCMJ.  (Ex. B at 6–7 (exceptions and substitutions); Ex. C (original charge).)

As a term of the pretrial agreement, *inter alia*, Seeto also agreed to tender his unconditional resignation from the military service and waive his right to a board hearing for any administrative discharge.  (Ex. B at 11.)  Seeto acknowledged that he may be separated with the worst possible service characterization, UOTHC.  (*Id*.)  Seeto made the pretrial agreement under full advice of defense counsel with whom he affirmatively stated he was satisfied.  (*Id*. at 12.)

In exchange, the government dismissed one of the charges and imposed a sentence cap.  (*Id*. at 11, 14.)  The sentence cap provided that if the judge imposed a sentence which included dismissal or forfeitures, those portions of the sentence would be disapproved.  (*Id*. at 14.[4])  In

---

adjudge a dishonorable discharge, bad conduct discharge, or no discharge to an enlisted member. *Id*.

[4] In the military justice system, the sentencing body, whether jury or judge, is not informed of the terms of the sentence cap prior to announcing the sentence.  Thus, the defendant gets the benefit of both the cap and any announced lower sentence.  The Convening Authority, the commander

accordance with his plea, Seeto was convicted and sentenced.  (*Id*. at 6–8.)  Seeto's criminal appeal is still pending before the AFCCA.  (*See* AFCCA Court Docket Listing at 3, attached hereto as **Exhibit D**.)

On October 14, 2019, the Air Force notified Seeto of administrative discharge,[5] requiring that he show cause for retention in the military.  (Ex. B at 1.)  At the time of discharge notification, Seeto was an active duty officer in the grade of Captain with nine years of service.  (*See* Certificate of Release or Discharge from Active Duty, attached hereto as **Exhibit E**.)  Accordingly, as an officer with six or more years of service, he would have been entitled to a BOI.  (Ex. B at 2.)  The discharge action was initiated under Air Force Instruction (AFI) 36-3206, paragraph 3.6.4, serious or recurring misconduct punishable by military or civilian authorities.  (*Id*. at 1.)  The reason for the discharge was that Seeto "did grab and hold [the victim's] body with your hands and legs without her express consent, which . . . constituted conduct unbecoming an officer and a gentleman, in violation of Article 133, [UCMJ]."  (*Id*.)  Seeto acknowledged his understanding and his rights, including right to counsel.  (*Id*. at 5.)

On November 6, 2019, along with his response, Seeto also submitted both his resignation in lieu of administrative discharge and separately his unconditional waiver of any board hearing, again acknowledging for both that he is subject to the worst possible service characterization, UOTHC.  (*Id*. at 20–26.)  On May 25, 2020, the Air Force denied Seeto's resignation and approved his discharge under AFI 36-3206, para. 3.6.4, "serious or recurring misconduct

---

who ordered the court-martial take place, is the first clemency authority who may approve, disapprove, or commute any portion of the findings or sentence, subject to some statutory restrictions.  R.C.M. 1110; 10 U.S.C. §§ 860a–60b.  The pretrial agreement is between the defendant and the Convening Authority.  *See generally* R.C.M. 705.

[5] To be clear, this discharge was an administrative personnel action, not a punitive discharge imposed as part of any sentence from the court-martial.

punishable by military or civilian authorities" with a UOTHC service characterization. (*Id*. at 27.)

On June 8, 2020, Seeto filed the present Complaint, requesting injunctive relief in the form of a Temporary Restraining Order (TRO) "precluding execution of Plaintiff's UOTHC discharge" until completion of appellate review in his criminal case and a hearing on the appropriateness of his discharge. (Compl. at 7.) The Clerk of Court issued the summons in this case on June 16, 2020. (ECF No. 4.)

Meanwhile, on June 9, 2020, the Air Force issued the DD Form 214, Certificate of Release or Discharge from Active Duty, for Seeto, with effective date of separation June 8, 2020. (Ex. D.) On August 20, 2020, Seeto's final pay was submitted for electronic funds transfer. (*See* Military Pay Voucher, attached hereto as **Exhibit F**.)

Seeto has also filed an application for review to the Air Force Discharge Review Board (AFDRB) on June 25, 2020. (*See* Application for the Review of Discharge from the Armed Forces of the United States, attached hereto as **Exhibit G**.) His application is pending review. Seeto's Complaint indicates he is familiar with the processes for two modes of administrative relief, the AFDRB and the Air Force Board for Correction of Military Records (AFBCMR). (Compl. at 7.) According to Seeto, "DRB and BCMR relief will take approximately two and four years, respectively." (*Id*.)

## STANDARD OF REVIEW

A federal court must have subject matter jurisdiction over a claim before it can reach the merits of a case in which the claim is raised. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007). The plaintiff bears the burden of proving that subject matter jurisdiction exists. *Piney Run Pres. Ass'n v. Cty. Comm'rs*, 523 F.3d 453, 459 (4th Cir. 2008).

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for mootness, which pertains to subject matter jurisdiction. *Stone v. Trump*, 400 F. Supp. 3d 317, 333-34 (D. Md. 2019) (citing *CGM, LLC v. BellSouth Telcomm's, Inc.*, 664 F.3d 46, 52 (4th Cir. 2011); *Akers v. Md. State Educ. Ass'n*, 376 F. Supp. 3d 563, 569 (D. Md. 2019)). A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction "challenges a court's authority to hear the matter brought by a complaint." *Id*. (citing *Akers*, 376 F. Supp. 3d at 569). Under Rule 12(b)(1), "the plaintiff bears the burden of proving, by a preponderance of the evidence, the existence of subject matter jurisdiction." *Id*. (internal citations omitted); *see also Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015).

Defendants challenging a complaint under Rule 12(b)(1) may advance a "facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting 'that the jurisdictional allegations of the complaint [are] not true.'" *Id*. (citing *Hasley v. Ward Mfg., LLC*, No. RDB-13-1607, 2014 WL 3368050, at *1 (D. Md. July 8, 2014) (alteration in original) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)); *see also Wikimedia Found. v. NSA*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017)). In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192.

In a factual challenge, on the other hand, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Id*. In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004) (internal citations omitted). Defendant moves for

7

dismissal in this latter form of challenge – a factual challenge – under Rule 12(b)(1), as events subsequent to the complaint deprive the Court of subject matter jurisdiction over Seeto's claims. *See* Fed. R. Civ. P. 12(b)(1).

## ARGUMENT

### A. This Court Lacks Subject Matter Jurisdiction Because Seeto's Discharge from the U.S. Air Force Mooted His Interest in the Outcome of this Litigation.

Under the limits that the U.S. Constitution sets on federal courts' jurisdiction, "the issue before the court [must be] a 'case or controversy.'" *See Watkins v. Napolitano*, No. RWT-11-2257, 2012 WL 4069763, at *2 (D. Md. Sept. 14, 2012) (quoting U.S. Const. art. III, § 2, cl. 1). Therefore, "the issue brought before the court cannot be moot," that is, the issues presented must be ongoing. *Id.*; *see also Renne v. Geary*, 501 U.S. 312, 320-21 (1991). In other words, "[w]hen a case or controversy ceases to exist – either due to a change in the facts or the law – 'the litigation is moot, and the court's subject matter jurisdiction ceases to exist also.'" *Stone*, 400 F. Supp. 3d at 335 (quoting *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017)).

A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* (quoting *Deal v. Mercer Cty. Bd. of Educ.*, 911 F.3d 183, 191 (4th Cir. 2018) (internal citation omitted)). "Mootness has been described as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Id.* (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (internal citation omitted)).

Indeed, "[w]here on the face of the record it appears that the only concrete interest in the controversy has terminated, reasonable caution is needed to be sure that mooted litigation is not pressed forward, and unnecessary judicial pronouncements on even constitutional issues

8

obtained . . . ." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990). When developments occur during the course of a case that prevent the court from being able to grant the requested relief, the case must be dismissed. *See Flast v. Cohen*, 392 U.S. 83, 95 (1968). This is because an actual controversy must exist "at all stages of review, not merely at the time the complaint is filed." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732 (2008) (internal citation omitted).

The only relief sought in Seeto's Complaint is to "preclud[e] Defendant's execution of Plaintiff's UOTHC discharge until the completion of Article 66, UCMJ appellate review and a hearing regarding the appropriatness [sic] of AFI 36-3206 paragraph 3.6.4 as the basis for Plaintiff's discharge UOTHC." (Compl. at 7.) Per his DD Form 214, Seeto was discharged the day after he filed his Complaint, effective the previous day – the day he filed his Complaint. (Ex. E.) In recognition of his discharge, Seeto then applied for review of said discharge with the AFDRB. (Ex. G.) Given these developments, Seeto no longer has a legally cognizable interest in the outcome of his Complaint because this Court can no longer provide the sole relief he seeks – preventing his discharge which has now transpired. Therefore, there is no longer an active case or controversy, and the case should be dismissed as moot pursuant to Rule 12(b)(1).

## B. This Court Also Lacks Subject Matter Jurisdiction Because Seeto is Pursuing Administrative Remedies and Any Claim He Pursues Thereafter Should be Pursuant to the Tucker Act in the Court of Federal Claims.

Seeto has brought his Complaint under the Administrative Procedure Act (APA). (Compl. at 3.) However, given Seeto's Complaint is now moot, it is not clear what relief he seeks, and whether those claims would come under the APA or the Tucker Act. If Seeto pursues restoration to duty and back pay, which Defendant believes is probable, those claims would fall under the Tucker Act, and therefore be within the exclusive jurisdiction of the Court of Federal Claims. Regardless of which statutory framework Seeto brings any future hypothetical claim, deferring to Air Force administrative review boards now will only operate to Seeto's benefit.

9

In his Complaint, Seeto stated he plans to pursue administrative relief, potentially through both the AFDRB and AFBCMR.  (Compl. at 7.)  His case is already pending review with the AFDRB.  (Ex. G.)  Both the AFDRB and the AFBCMR are statutorily and independently authorized to grant relief to Seeto.  10 U.S.C. §§ 1552, 1553.  The AFDRB has the discretion to upgrade Seeto's service characterization and basis for discharge.  10 U.S.C. § 1553(b)(1) (codifying that a board established under this section may "change a discharge or dismissal, or issue a new discharge, to reflect its findings").  In its review, the AFDRB is not restricted to finding errors of law and regulation.  *See id*.  Neither is the AFBCMR.  10 U.S.C. § 1552(a)(1) (empowering the AFBCMR to "correct an error or remove an injustice").  Unlike the courts which will review agency decisions as a matter of law, a military corrections board has broad discretionary equitable powers.  *Pride v. United States*, 40 Fed. Cl. 730, 734 (1998) ("The Secretary, acting through designated [military corrections] boards, has much greater power than does this court in the exercise of remedial relief.") (citing *Bates v. United States*, 453 F.2d 1382, 1385 (Ct. Cl. 1972)).

Thus, deferring to these administrative reviews will operate to Seeto's benefit.  A court's APA review is made based on the administrative record of the agency action.  *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("The factfinding capacity of the district court is thus typically unnecessary to judicial review of agency decisionmaking . . . courts are to decide, on the basis of the record the agency provides, whether the action passes muster under the appropriate APA standard of review."); *see* 5 U.S.C. § 706.  Similarly, review under the Tucker Act is also made upon the administrative record.  *E.g.*, *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983).

In challenges to a military member's involuntary discharge under the Tucker Act, 28 U.S.C. § 1491, the court's review is "normally limited to the administrative record developed before the military board." *See Bateson v. United States*, 48 Fed. Cl. 162, 164 (2000) (internal citation omitted).  A discharged military member is not required to exhaust administrative remedies prior to filing suit, but declining to do so affects the quality of the available administrative record.  *Id*.  "In cases where an officer has not pursued an administrative appeal the officer has waived the right to make an administrative record and has to rely in a subsequent action for judicial review on the evidentiary record before the deciding official."  *Id*. (internal citation omitted).

*Bateson*'s discussion of the importance of developing the administrative record was in the context of a lawsuit by several discharged Air Force officers, some of whom had sought relief from the AFBCMR and some of whom proceeded directly to court.  *Id*. at 163.  The *Bateson* court denied the officers' attempts to conduct discovery.  *Id*.  Proceeding in court meant the plaintiffs "waived the right to make an administrative record."  *Id*. at 164.  The implication is that exhausting administrative remedies with the various military boards is the only means of affording a fuller record upon which the court can make its review.

The Air Force boards are in the best position to evaluate Seeto's arguments in the first instance and further develop the facts.  "Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters."  *Orloff v. Willoughby*, 345 U.S. 83, 94 (1953).  Courts "have traditionally deferred to the superior experience of the military in matters of duty orders, promotions, demotions, and retentions," *Knutson v. Wis. Air Nat'l Guard*, 995 F.2d 765, 771 (7th Cir. 1993), and the "military is entitled to substantial deference in the governance of its affairs."

*Dodson v. United States Gov't, Dep't of Army*, 988 F.2d 1199, 1204 (Fed. Cir. 1993); *see also Friedman v. United States*, 310 F.2d. 381, 386-87 (1962) ("Congress has entrusted the administrators with a large measure of discretion and has in effect established an executive agency as the primary tribunal for determining whether certain adverse action should be taken against the employee."). "Perhaps only the most egregious decisions may be prevented under [the APA's] deferential standard of review." *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1515 (D.C. Cir. 1989). Thus, allowing any boards to finish its review will be to the benefit of all parties and, eventually, the record before the Court should Seeto find cause to challenge the AFDRB and AFBCMR decisions.

Although resort to a military corrections board is a permissive mode of relief and not statutorily required, *Hurick v. Hehman*, 782 F.2d 984, 987 (Fed. Cir. 1986), "where Congress has not clearly required exhaustion, sound judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (superseded by statute in 1995 on other grounds as discussed in *Booth v. Churner*, 532 U.S. 731, 739 (2001)). The Supreme Court "long has acknowledged the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts." *Id*. at 144-45; *but see Darby v. Cisneros*, 509 U.S. 137, 154 (1993) (holding that courts may not impose exhaustion requirements in APA cases where exhaustion is not required by statute but may still impose exhaustion in non-APA cases).

The Federal Circuit has specifically held that "when the administrative process is initiated after judicial relief has been sought and is still pending, the claimant must exhaust the correction board process before returning to the Court of Federal Claims." *Martinez v. United States*, 333 F.3d 1295, 1310 (Fed. Cir. 2003). Here is such a case. Seeto applied to the AFDRB after filing his Complaint, (Ex. G.), and may yet apply to the AFBCMR as well. (Compl. at 7.)

Without further specificity that is absent from the current complaint, it is impossible to discern whether Seeto would intend his challenge to be under the APA or the Tucker Act. The APA's waiver of sovereign immunity is limited to claims "for which there is no other adequate remedy in a court . . . ." 5 U.S.C. § 704. District courts share concurrent jurisdiction with the Court of Federal Claims for claims less than $10,000 pursuant to the "Little Tucker Act." 28 U.S.C. § 1346(a)(2). By contrast, the "Big Tucker Act" grants the Court of Federal Claims exclusive jurisdiction to render judgment against the United States for damages of $10,000 or more. 28 U.S.C. § 1491.

Such challenges to involuntary discharge are generally heard in the Court of Federal Claims under the Tucker Act. *E.g.*, *Cook v. Arentzen*, 582 F.2d 870, 878 (4th Cir. 1978) (remanding to the district court to transfer to the Court of Claims); *Smith v. Sec'y of Army*, 384 F.3d 1288, 1292 (Fed. Cir. 2004); *Denton v. Schlesinger*, 605 F.2d 484, 484 (9th Cir. 1979) (affirming district court's transfer to the Court of Claims); *Martinez*, 333 F.3d 1295. The "availability of an action for money damages under the Tucker Act . . . is presumptively an 'adequate remedy' for [APA] § 704 purposes," *Telecare Corp. v. Leavitt*, 409 F.3d 1345, 1349 (Fed. Cir. 2005), and if so, "then the proper forum for resolution of the dispute is not a district court under the APA but the Court of Federal Claims under the Tucker Act." *Suburban Mortg. Assoc., Inc. v. U.S. Dep't of Hous. and Urban Dev.*, 480 F.3d 1116, 1126 (Fed. Cir. 2007). In addition to money damages, the Tucker Act authorizes the Court of Federal Claims to "provide an entire remedy" by "directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records." 28 U.S.C. § 1491(a)(2); *e.g.*, *Mitchell v. United States*, 930 F.2d 893, 896 (Fed. Cir. 1991) (citing a list of previous cases as examples where the Court of Federal Claims ordered such relief).

Seeto seemingly would be seeking restoration to duty, which would correspond with an entitlement to back pay. Three months out from his date of discharge so far, his potential back pay already exceeds $10,000, even ignoring allowances and any special pay. (*See* Monthly Basic Pay Table, attached hereto as **Exhibit H**.) Seeto's future challenge would properly fall within the exclusive jurisdiction of the Tucker Act. "Although his complaint is cast in terms of an action for mandamus and a declaratory judgment, the case is essentially one for a money judgment . . . [T]he Court of Claims is the proper forum to bring this type of action." *Denton*, 605 F.2d at 487-88 (internal citation and quotation marks omitted).

Therefore, Seeto must first exhaust the administrative remedies he has already begun pursuing. Because Seeto has not exhausted his open administrative review and because jurisdiction over his eventual claims would lie in the Court of Federal Claims, this Court should dismiss the Complaint pursuant to Rule 12(b)(1).

## CONCLUSION

For the foregoing reasons, Plaintiff's Complaint is moot and Defendant respectfully requests the Court dismiss the Complaint without prejudice. In the alternative, the Court should find that it lacks subject matter jurisdiction because any claim Seeto brings after pursuing his administrative remedies would likely proceed under the Tucker Act in the Court of Federal Claims.

Respectfully submitted,

Robert K. Hur
United States Attorney

\_\_\_\_\_/s/_____
Kimberly S. Phillips
Assistant United States Attorney
36 S. Charles St., 4th Flr.
Baltimore, MD 21201
Tel: 410-209-4800
Kimberly.Phillips@usdoj.gov

Of Counsel:
Hank D. Nguyen, Capt, USAF
Military Personnel Branch
General Litigation Division
Air Force Legal Operations Agency
1500 West Perimeter Road, Suite 1370
J.B. Andrews-Naval Air Facility, MD 20762